**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 1:22-cv-00734-CJN |
| *v.* | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 1

LEGAL STANDARD................................................................................................................. 2

ARGUMENT .............................................................................................................................. 3

I.      DOJ's Search Was Reasonably Calculated to Locate Responsive Records. ....................... 3

II.     DOJ Properly Withheld Budget Information under Exemption 7(A). ............................... 7

III.    DOJ Processed and Released All Reasonably Segregable Information. ......................... 10

CONCLUSION.......................................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*August v. FBI*,
  328 F.3d 697 (D.C. Cir. 2003) ................................................................. 2

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*,
  473 F.3d 312 (D.C. Cir. 2006) ................................................................. 3

*Brayton v. Office of U.S. Trade Representative*,
  641 F.3d 521 (D.C. Cir. 2011) ................................................................. 2

*Campbell v. U.S. Dep't of Justice*,
  164 F.3d 20 (D.C. Cir. 1998) ................................................................... 7

*Chambers v. U.S. Dep't of Interior*,
  568 F.3d 998 (D.C. Cir. 2009) ................................................................. 4

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,
  746 F.3d 1082 (D.C. Cir. 2014) ............................................................... 9

*Citizens for Responsibility & Ethics in Wash. v. Nat'l Indian Gaming Comm'n*,
  467 F. Supp. 2d 40 (D.D.C. 2006) ......................................................... 10

*Clemente v. FBI*,
  867 F.3d 111 (D.C. Cir. 2017) ................................................................. 3

*Gilliam v. U.S. Dep't of Justice*,
  128 F. Supp. 3d 134 (D.D.C. 2015) ......................................................... 2

*Jefferson v. U.S. Dep't of Justice*,
  284 F.3d 172 (D.C. Cir. 2002) ................................................................. 7

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ................................................................................ 2

*Juarez v. U.S. Dep't of Jusice*,
  518 F.3d 54 (D.C. Cir. 2019) ................................................................. 11

*Judicial Watch, Inc. v. U.S. Dep't of Defense*,
  715 F.3d 937 (D.C. Cir. 2013) (per curiam) ............................................ 3

*Levinthal v. FEC*,
  219 F. Supp. 3d 1 (D.D.C. 2016) ............................................................. 7

*Light v. U.S. Dep't of Justice*,
 968 F. Supp. 2d 11 (D.D.C. 2013) ........................................................... 3

*Leopold v. CIA*,
 106 F. Supp. 3d 51 (D.D.C. 2015) ........................................................... 10

*Military Audit Project v. Casey*,
 656 F.2d 724 (D.C. Cir. 1981) ................................................................ 3

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
 402 F. Supp. 2d 211 (D.D.C. 2005) ......................................................... 10

*Oglesby v. U.S. Dep't of Army*,
 920 F.2d 57 (D.C. Cir. 1990) ............................................................... 3, 6

*Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary &
 Water Comm'n, U.S.-Mexico*,
 740 F.3d 195 (D.C. Cir. 2014) ................................................................ 7

*SafeCard Servs., Inc. v. SEC*,
 926 F.2d 1197 (D.C. Cir 1991) ............................................................... 4

*Sea Shepherd Conservation Soc'y v. IRS*,
 208 F. Supp. 3d 58 (D.D.C. 2016)) .......................................................... 7

*Sussman v. U.S. Marshals Serv.*,
 494 F.3d 1106 (D.C. Cir. 2007) .............................................................. 10

*Tax Analysts v. IRS*,
 294 F.3d 71 (D.C. Cir. 2002) .................................................................. 7

*Weisberg v. U.S. Dep't of Justice*,
 745 F.2d 1476 (D.C. Cir. 1984) .............................................................. 3

**STATUTES**

5 U.S.C. § 552 ................................................................................... 2, 7, 10

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 56 ..................................................................................... 2

## INTRODUCTION

Plaintiff Judicial Watch brought this suit to challenge the response of Defendant the United States Department of Justice ("DOJ") to Judicial Watch's Freedom of Information Act request. The only issues for the Court to address are the reasonableness of DOJ's search and its redactions under Exemption 7(A) of numerical budgetary information related to the ongoing investigations being conducted by Special Counsel John Durham. As set forth herein, and in the accompanying declaration of Vanessa R. Brinkmann, DOJ has conducted a reasonable search and withheld only information that was compiled for law enforcement purposes and that could reasonably be expected to interfere with ongoing proceedings if disclosed. DOJ therefore respectfully submits that summary judgment in its favor is warranted.

## BACKGROUND

Judicial Watch sent the FOIA request at issue in this case to DOJ on August 23, 2021. *See* Declaration of Vanessa R. Brinkmann ("Brinkmann Decl.") ¶ 4 (attached as Exhibit 1). That request sought the following two categories of records: (1) "All records of communications, including emails and text messages, between Special Counsel John Durham and Attorney General Merrick Garland"; and (2) "All budget records related to the operations of the office of Special Counsel John Durham." *Id.*; *see also* Compl. ¶ 5. Judicial Watch's request sought records from January 1, 2021 to the present. *Id.* DOJ acknowledged Judicial Watch's FOIA request by letter dated September 20, 2021. *Id.* ¶ 8. Judicial Watch filed the instant lawsuit on March 16, 2022. *See* Complaint, ECF No. 1.

DOJ sent Judicial Watch's an interim response to its FOIA request by letter dated June 3, 2022. *See* Brinkmann Decl. ¶ 10. In that response, DOJ stated that it had conducted its initial searches and determined that three pages of records responsive to Judicial Watch's request were responsive, and that those three pages were being released with excisions made pursuant to

Exemption 7(A). *Id.* By letter dated August 10, 2022, DOJ provided its final response to the request. *Id.* ¶ 12. In that letter, DOJ informed Judicial Watch that it had conducted additional searches and that seven pages of records responsive to the request were being released in full. *Id.* DOJ now moves for summary judgment pursuant to Court's September 1, 2022 Scheduling Order. *See* Scheduling Order, ECF No. 14.

### LEGAL STANDARD

Although FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). Accordingly, while "disclosure, not secrecy, is the dominant objective of the Act," and while the Act's exemptions must therefore "be narrowly construed," the exemptions also must be given "meaningful reach and application" in order to achieve the "workable balance" that Congress has struck "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency*, 493 U.S. at 152 (citations omitted). The agency bears the burden of justifying the withholding of material responsive to the plaintiff's FOIA request, and this Court reviews the agency's response to that request *de novo*. *See* 5 U.S.C. § 552(a)(4)(B).

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. Dep't of Justice*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions

claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

A court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail," that "demonstrate that the information withheld logically falls within the claimed exemption[s]," and that are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible" to the court. *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted).

## ARGUMENT

## I.      DOJ's Search Was Reasonably Calculated to Locate Responsive Records.

An agency is entitled to summary judgment in a FOIA case with respect to the adequacy of its search if it shows "'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted). And "[a]n agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). "Agency affidavits are accorded a presumption of good faith, which cannot be

3

rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted); *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (recognizing substantial weight traditionally accorded to agency affidavits in FOIA adequacy-of-search cases). Applying these principles, DOJ is entitled to summary judgment with respect to the adequacy of its searches as to Judicial Watch's request.

DOJ's Office of Information Policy ("OIP")—which processes FOIA requests on behalf of itself and six senior leadership offices within DOJ, as well as the Special Counsel's Office ("SCO")—oversaw the search for records responsive to Judicial Watch's request. *See* Brinkmann Decl. ¶¶ 13, 16. As part of its efforts to identify responsive material, OIP searched eleven custodians in OAG as well as the Attorney General's official calendar. *Id.* ¶ 16. Additionally, OIP became aware that the Office of the Deputy Attorney General ("ODAG") was involved in matters related to the Special Counsel's budget. *Id.* As such, OIP searched for records among thirty-two custodians in ODAG. *Id.* These custodians constituted all OAG and ODAG staff identified by OIP, using office directories, as having been employed by those offices during the period January 20, 2021 to March 8, 2022. *Id.* OIP conducted remote electronic searches for responsive material in these custodians' email, calendar, and electronic documents. *Id.* For the period of January 1, 2021 through January 19, 2021, OIP conducted a separate search of a database of officials' records for OAG and ODAG who worked in those offices during the previous Presidential administration. *Id.* This database similarly contains those officials' emails, calendars, and electronic documents. *Id.*

The date range for those searches was January 1, 2021 through March 8, 2022. *Id.* ¶ 17. The searches included all communications in which Special Counsel John Durham participated, and all communications containing certain keyword combinations, as described in paragraph 17

of the Brinkmann Declaration. *See id.* In addition, to account for the possibility of responsive text messages, OIP contacted OAG to determine whether any text messages existed between Attorney General Garland and Special Counsel Durham. *Id.* ¶ 18. Knowledgeable staff within OAG confirmed that no text messages responsive to Judicial Watch's request exist. *Id.*

OIP also searched for responsive records in DOJ's Departmental Executive Secretariat ("DES"), which is the official records repository of OAG, ODAG, and the Office of the Associate Attorney General, and maintains records of all formal, controlled, unclassified correspondence sent to or from those offices from January 1, 2001 to the present day. *Id.* ¶ 19. The DES also maintains certain Office of Legislative Affairs records, including records of formal Departmental correspondence with Congress. *Id.* Moreover, DES is used to track internal Department correspondence sent through formal channels, as well as certain external correspondence including Departmental correspondence with Congress. *Id.*

Records received by the designated senior leadership offices are entered into DES's database using certain data elements, including such items as the date of the document, the date of receipt, the sender, and the recipient, as well as a detailed description of the subject of the record. *Id.* ¶ 20. In addition, entries are made that, among other things, reflect what action is to be taken on the records, which component has responsibility for that action, and when that action should be completed. *Id.* Keyword searches of the DES database may then be conducted by utilizing a single search parameter or combinations of search parameters. *Id.* Search parameters may include the subject, organization, date, correspondent name, or other keywords. *Id.* OIP employed those capabilities to search for records responsive to Plaintiff's FOIA request in the electronic database of the DES using the same search terms and date range as for the OAG and ODAG custodians, described in paragraph 17 of the Brinkmann Declaration. *Id.* ¶¶ 17, 21.

Through the above-described searches, OIP located the SCO's approved budget for fiscal year 2022, which was released in part to Judicial Watch on June 3, 2022. *Id.* ¶ 22. Additionally, in order to determine whether other SCO "budget records" existed for the time period of Plaintiff's request, OIP additionally contacted both the Finance Staff and the Budget Staff of the Department's Justice Management Division. *Id.* The Finance Staff "formulates and establishes Department-wide policies, procedures, and financial systems to support planning, programming, budgeting, accounting and other financial management activities." *Id.* (quoting Justice Management Division, *Our Agency*, www.justice.gov/jmd/about-division-3). The Budget Staff "serves as the central budget office for DOJ . . . [and] oversees all aspects of planning and preparation of the budget for the entire Department of Justice." *Id.* Through discussions with members of the Finance Staff and the Budget Staff, OIP was informed that the final approved budget that OIP located and produced to Judicial Watch was the only definitive budget record for that year and no draft budget documents existed. *Id.*[1]

Thus, as detailed in the Brinkmann Declaration, DOJ's search was reasonably calculated to uncover all potentially responsive records. *See id.* ¶ 23. By taking the steps described above, DOJ employed reasonable and adequate searches "using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. As such, DOJ is entitled to summary judgment with respect to the adequacy of its searches.

---

[1] On July 1, 2022, undersigned counsel contacted counsel for Judicial Watch to share DOJ's understanding that Judicial Watch's request for "budget records" meant the SCO's approved budgets during the timeframe of the request. Judicial Watch has not conveyed any concerns to undersigned counsel regarding DOJ's reading of the request, and therefore DOJ understands its reading to be correct.

**II.    DOJ Properly Withheld Budget Information under Exemption 7(A).**

The DOJ redactions at issue in this case were proper under Exemption 7(A). This exemption protects from disclosure records that satisfy two requirements: first, that the records in question have been "compiled for law enforcement purposes," and second, that disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

With respect to the threshold requirement that a record have been "compiled for law enforcement purposes," the D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172, 177 (D.C. Cir. 2002)) (additional citations omitted). A record is "compiled for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Further, where, as here, "the agency's principal function is law enforcement," courts are "'more deferential'" to the agency's claimed purpose for the particular records." *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002).

The redacted budgetary information satisfies these criteria because it directly relates to the ongoing investigations and prosecutions being carried out by Special Counsel John Durham, who was appointed by Attorney General Barr on October 19, 2020. *See* Brinkmann Decl. ¶ 27. Attorney General Barr appointed Special Counsel Durham

> to investigate whether any federal official, employee, or any other person or entity
> violated the law in connected with the intelligence, counter-intelligence, or law-
> enforcement activities directed at the 2016 presidential campaigns, individuals associated
> with those campaigns, and individuals associated with the administration of President
> Donald J. Trump, including but not limited to Crossfire Hurricane and the investigation
> of Special Counsel Robert S. Mueller, III.

Department of Justice, Office of the Attorney General, Order No. 4878-2020 (attached as

Exhibit B to the Brinkmann Decl.).  In addition, the appointment order provided that "[i]f the

Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to

prosecute federal crimes arising from the investigation of these matters."  *Id.*  All of the

information DOJ withheld pursuant to Exemption 7(A) directly relates to Special Counsel

Durham's investigations into potential violations of law, and thus readily meets the exemption's

threshold.  *See* Brinkmann Decl. ¶ 27.

Turning to the second prong of the Exemption 7(A) analysis, producing the withheld

information could reasonably be expected to interfere with the Special Counsel's ongoing

investigations.[2]  *See id.* ¶ 33.  The withheld information consists of the total dollar amounts for

the SCO's Fiscal Year 2022 budget estimate, as well as a detailed breakdown of individual

budget line-item estimates related to personnel, including number and type of staff, salaries and

benefits as well as estimates for costs, including travel, supplies, and equipment.  *Id.* ¶ 28.  This

information has not been officially disclosed.  *Id.*

Releasing these non-public details about the specific contours of the SCO's investigatory

activities and the amount of financial and other resources budgeted to the SCO for the current

fiscal year would risk undermining ongoing criminal investigations and prosecutions.  *Id.* ¶ 31.

---

[2] As a result of various investigations, the SCO has obtained multiple indictments, of which
the following criminal prosecution is public and ongoing:  *United States v. Igor Y. Danchenko*, No.
1:21-cr-245 (E.D. Va.).  Moreover, additional investigations related to the work of the SCO, or
targeting related actors, remain pending.  *See* Brinkmann Decl. ¶ 30.

That is particularly true because the Department already publicly releases a biannual Statement of Expenditures for the Special Counsel's Office. *Id.* This Statement of Expenditures contains a detailed accounting of how much the Special Counsel's Office has spent during the reporting period on personnel, travel, and supplies, among other line items. *Id.*

Taken together with the Statement of Expenditures, release of the withheld budget information would allow individuals to calculate how much of its budget the SCO has spent and thereby determine how much funds remain available to the SCO or whether the SCO was over budget. *Id.* ¶ 32. These datapoints would provide detailed insights into the scope, direction and nature of the SCO's investigations and activities, and it is reasonably foreseeable that disclosure of such information could harm ongoing criminal investigations and/or prosecutions. *Id.* ¶¶ 31–33. For example, ascertaining that the SCO was overbudget would possibly suggest new and increased investigatory activity, which could lead to adversarial third parties fabricating or destroying evidence or tampering with, improperly influencing, or intimidating witnesses, in an effort to disrupt the perceived expansions in the SCO investigations. *Id.* ¶ 32. Similarly, ascertaining that the SCO was under budget could suggest that the SCO was nearing the conclusion of its investigations or no longer pursing particular areas of investigation. *Id.* ¶ 32. These revelations, in turn, could lead to witnesses or possible subjects modifying their behavior or being less cooperative, with the expectation that the investigations and prosecutions are coming to a close. *Id.*

When evaluating Exemption 7(A) withholdings, courts "give deference to an agency's predictive judgment of the harm that will result from disclosure of information." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014). Moreover, although an agency must demonstrate "that release of the records reasonably

could be expected to cause some articulable harm," the agency "need not submit declarations that reveal the exact nature and purpose of its investigations in order to satisfy FOIA— Exemption 7(A) exists precisely to shield that sort of revelation." *Citizens for Responsibility & Ethics in Wash. v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 51–52 (D.D.C. 2006). Application of these standards, together with the averments set forth in the Brinkmann Declaration, discussed above, yield the conclusion that DOJ properly withheld portions of the materials responsive to Judicial Watch's request under Exemption 7(A). *Cf. Leopold v. CIA*, 106 F. Supp. 3d 51, 54, 58 (D.D.C. 2015) (upholding, under Exemption 3 and Section 102A(i)(1) of the National Security Act, the CIA's withholding of information "relate[d] to . . . proposed and actual expenditures on [its] detention and interrogation program," on the grounds that disclosure of the same "could reveal sensitive information about [the Agency's] sources and methods").

## III.  DOJ Processed and Released All Reasonably Segregable Information.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9).  But an agency need not disclose records in which the nonexempt information remaining is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (concluding that no reasonably segregable information existed, where "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words.").  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  And as with other aspects of its review under FOIA, a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further

10

segregated." *Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2019).

Here, DOJ has withheld only the specific dollar amounts corresponding to the line-item and total approved Fiscal Year 2022 Special Counsel budget request, as well as other numerical figures, corresponding to the number and type of staffing resources working for the SCO. Brinkmann Decl. ¶ 34.  DOJ thoroughly reviewed the information withheld from release on the basis of Exemption 7(A) and determined releasing any further information could reasonably be expected to interfere with enforcement proceedings.  *Id.*  As there are no facts rebutting the presumption that DOJ complied with its segregability obligations, DOJ is entitled to summary judgment on that issue.

## CONCLUSION

For the foregoing reasons and those discussed in the attached declaration, Defendant asks that the Court grant its motion for summary judgment and dismiss Plaintiff's FOIA claim.

Dated: September 30, 2022              Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Principal Deputy Assistant Attorney General

                                       ELIZABETH J. SHAPIRO
                                       Deputy Branch Director

                                       */s/ Bradley P. Humphreys*
                                       BRADLEY P. HUMPHREY
                                       (D.C. Bar. No. 099857)
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, N.W.
                                       Washington, D.C. 20005
                                       Tel.: (202) 305-0878
                                       E-mail: Bradley.Humphreys@usdoj.gov

                                       *Counsel for Defendant*

11